IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-01073-PAB-MEH

NICHOLAS J. AURELIO and
ALLEN DE ATLEY,

    Plaintiffs,

v.

CORRECTIONS CORPORATION OF AMERICA,
CORE CIVIC, INC.,
MICHAEL MILLER,
INVESTIGATOR ORTIZ,
MS. WALTER, and
DAVID M. ZUPAN,

    Defendants.

---

# ORDER

---

This matter is before the Court on defendants' Motion for Summary Judgment [Docket No. 40]. The Court has jurisdiction under 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Plaintiffs Nicholas Aurelio and Allen De Atley are currently incarcerated at the Crowley County Correctional Facility ("CCCF"), Docket No. 6 at 1-2, ¶¶ 1-2, which is part of the Colorado Department of Corrections ("CDOC"). Docket No. 19 at 1-2, ¶¶ 1-2; at 3, ¶ 10. Defendant Corrections Corporation of America ("CCCA") owned and operated CCCF at all relevant times. Docket No. 6 at 2, ¶ 3.[2] CCCF is now doing

---

[1] The following facts are undisputed unless otherwise noted.

[2] CCCF is a private prison that operates under a contract with CDOC. *See* Docket No. 40 at 6 (stating that CCCA is a private entity); Docket No. 54 at 5, ¶ 6

business as Core Civic, Inc. *Id.* at 2, ¶ 4; Docket No. 19 at 2, ¶¶ 3-4.

The individual defendants were employed at CCCF during the time period relevant to the complaint. Docket No. 6 at 2, ¶¶ 5-8; Docket No. 19 at 2-3, ¶¶ 5-8. Defendant Sara Ortiz was the facility investigator. Docket No. 40 at 3, ¶ 7. Her job duties included supervising CCCF's mail room and responding to grievances filed regarding mail room issues, but she did not personally handle any mail. *Id.*, ¶¶ 7-9. Defendant David Zupan was the assistant warden at CCCF. *Id.*, ¶ 10. Defendant Michael Miller was the warden. *Id.*, ¶ 12. The job responsibilities of defendants Zupan and Miller included ensuring that all CCCF policies, including legal mail policies, were followed. *Id.*, ¶ 11, 13. Their job duties did not include personally handling mail. *Id.* Defendant Myra Walter was the administrative supervisor at CCCF. *Id.*, ¶ 14. She did not personally handle any legal mail. *Id.*, ¶ 15.[3]

The procedure at CCCF was that, when compact discs ("CDs") were received in the mail, the CDs would be opened outside the presence of the recipient inmate. Docket No. 54 at 5, ¶ 8. The rationale behind this practice was to provide an opportunity to determine whether the CDs contained contraband. *Id.* This procedure was in violation of the applicable Administration Regulation. *Id.* at 6, ¶ 12.

Both plaintiffs arrived at CCCF in April 2016. Docket No. 40 at 2, ¶ 2. Issues

---

(referencing CDOC contract).

[3] Plaintiffs dispute this fact, Docket No. 54 at 3, ¶ 15, but fail to cite to any evidence in the record as required by Fed. R. Civ. P. 56(c)(1) and the Court's Practice Standards. *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv ("Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial."). As a result, the Court deems this fact admitted.

regarding the opening of legal mail were present immediately upon plaintiffs' arrival at CCCF and continued through May to July 2017. *Id.*, ¶ 3.[4] From April 2016 to July 2017, all of the mail that Mr. Aurelio received from his attorneys was opened outside of his presence. Docket No. 54 at 4, ¶ 3.[5] This mail included CDs sent by Mr. Aurelio's lawyer, which Mr. Aurelio claims contained "discovery on all three of his criminal matters, defense strategies, investigation notes and work product." Docket No. 6-1 at 2. Mr. Aurelio submitted a number of grievances complaining that his legal mail was opened outside of his presence. Docket No. 54 at 5, ¶ 4. The Department of Corrections' grievance officer concluded that the process of opening inmates' legal mail containing CDs outside of the inmates' presence was a violation of administrative regulations. *Id.* at 6, ¶ 13.

The three employees who were working in the mail room during the time in which plaintiffs complained of legal mail issues left their employment at CCCF in May 2017. Docket No. 40 at 2, ¶ 4.[6] The problems related to plaintiffs' legal mail "greatly diminished" as a result of those employees' departure. *Id.*, ¶ 5.

Mr. Aurelio bases his access to courts claim on the litigation of five legal

---

[4]This fact was admitted by Mr. Aurelio, but Mr. De Atley "does not know." *See* Docket No. 54 at 2, ¶ 3.

[5]No specific allegations are made regarding the extent to which Mr. De Atley's mail was opened outside of his presence. *See* Docket Nos. 6, 40, 54.

[6]The parties do not identify these three employees or indicate whether these employees were the only individuals who handled mail in the mail room. *See* Docket No. 40 at 2-6; Docket No. 54 at 4-8.

3

matters.[7]  *Id.* at 4, ¶ 20.  Two of these cases were civil actions that settled favorably to Mr. Aurelio.  *Id.*, ¶ 21.  Another case was a § 1983 lawsuit against the district attorneys who prosecuted his criminal case, which was dismissed as an improper collateral attack on Mr. Aurelio's state court conviction.  *Id.*, ¶ 22.  The dismissal was upheld on appeal.[8]  *Id.*  Mr. Aurelio stated that he did not believe that any of the legal mail problems had any effect on this case.  *Id.*, ¶ 23.  Another is Mr. Aurelio's motion for post-conviction relief, which is currently pending.  *Id.* at 5, ¶ 27.  Mr. Aurelio did not have any problems filing his motion for post-conviction relief due to legal mail issues.  *Id.*  The last case is a malpractice case against his former attorney, which is currently stayed.  *Id.*, ¶ 25.

Mr. De Atley bases his access to courts claim on four cases.  *Id.*, ¶ 28.  One case involves his criminal appeal in state court.  *Id.*, ¶ 30.  The other three matters are in Tribal Court.  *Id.*, ¶ 29.  Mr. De Atley believes that "his problems include a corrupt judicial system that is moving slowly to thwart his appeals and lawsuits."  *Id.* at 6, ¶ 32.

Plaintiffs filed a complaint on June 2, 2017 raising a claim under 42 U.S.C. § 1983 and alleging the denial of the right of access to the courts under the First, Sixth, and Fourteenth Amendments.  Docket No. 6 at 6, ¶ 25.  On September 24, 2018, defendants filed a motion for summary judgment [Docket No. 40].  Plaintiffs filed a response on December 26, 2018 [Docket No. 54], to which defendants replied on January 15, 2019.  Docket No. 57.

---

[7]To prove the denial of equal access to courts, a plaintiff must demonstrate that the defendant "unduly hinder[ed] litigation at any stage of the proceedings."  *Vreeland v. Schwartz*, 613 F. App'x 679, 683 (10th. Cir. 2015) (unpublished).

[8]*Aurelio v. Joyce*, 683 F. App'x 731 (10th Cir. 2017) (unpublished).

4

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

The Tenth Circuit "has long recognized that, like all persons, 'inmates have a constitutional right to "adequate, effective, and meaningful" access to the courts and that states have "affirmative obligations" to assure all inmates such access.'" *Love v. Summit County*, 776 F.2d 908, 911 (10th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir. 1980)). The right of access is jointly protected by the petition clause of the First Amendment, *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008); the Sixth Amendment, *Arney v. Simmons*, 26 F. Supp. 2d 1288 (D. Kan. 1998); and the privileges and immunities and due process clauses of the Fourteenth Amendment. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). Courts have recognized, however, "that these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner*, 482 U.S. at 85). Because courts are "ill equipped to deal with the increasingly urgent problems of prison administration and reform, . . . prisoners' rights may be restricted in ways that 'would raise grave First Amendment concerns outside

the prison context.'" *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (quoting *Turner*, 482 U.S. at 84, 89). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

Defendants argue that they are entitled to summary judgment for three reasons: (1) plaintiffs have not provided sufficient evidence of a policy or custom implemented by the entity defendants to support a claim against those defendants; (2) plaintiffs cannot establish that any of the individual defendants personally participated in the challenged conduct, thereby precluding a claim against the individual defendants; and (3) plaintiffs have failed to establish a denial of access to the courts claim because they have not provided any evidence of an injury caused by the challenged conduct. Docket No. 40 at 6-10. Because it is dispositive, the Court focuses on defendants' third argument.

"To have standing to raise a claim of denial of access to the courts, a prisoner must demonstrate actual injury." *Harmon v. Keith*, 2010 WL 143708, at *2 (E.D. Okla. Jan. 11, 2010). A plaintiff must show that defendants' conduct "resulted in 'actual injury' by 'frustrat[ing],' 'imped[ing],' or 'hinder[ing] his efforts to pursue a legal claim.'" *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (quoting *Lewis v. Casey*, 518 U.S. 343, 351-53 n.3 (1996) (alteration marks in original)). "[T]he injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Only the following claims, if impaired, may satisfy the injury requirement: a direct appeal of a conviction, a habeas petition, or an action under 42 U.S.C. § 1983 to vindicate "basic constitutional rights." *Id.* (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

The undisputed facts do not indicate that plaintiffs were injured by any conduct of defendants that infringed upon their constitutional right to access courts. In fact, plaintiffs admit as much. Mr. Aurelio admits that his attempt to collaterally attack his conviction was not dismissed due to any legal mail problems caused by defendants. Docket No. 40 at 4, ¶ 23; Docket No. 54 at 4, ¶ 23. Further, he admits that he had no issues filing his motion for post-conviction relief. Docket No. 40 at 5, ¶ 27; Docket No. 54 at 4, ¶ 27. Similarly, Mr. De Atley does not argue that defendants' actions impaired the filing of his criminal appeal in any way. *See* Docket No. 40 at 5-6, ¶¶ 30-32. The remaining cases involved in plaintiffs' access to courts claim – in the case of Mr. Aurelio, two civil settlements and one stayed malpractice case against his former attorneys, and in the case of Mr. De Atley, three Tribal Court cases – cannot be used as a basis for establishing an access to courts claim, as the right to access of courts applies only to "civil rights claims and direct and collateral attacks on convictions and sentences." *Allen v. Raemisch*, 603 F. App'x 682, 684 (10th Cir. 2015) (unpublished) (finding that small-claims action was insufficient basis to demonstrate a violation of First Amendment right to access courts). Plaintiffs have made no showing that they were prejudiced in the litigation of their claims as a result of any legal mail issues. *See Arney*, 26 F. Supp. 2d at 1296 (finding no constitutional injury where "[p]laintiffs have made no showing of prejudice to pending or contemplated litigation – no court dates missed; no inability to make timely filings; no denial of legal assistance to which a plaintiff was entitled; and no loss of a case which could have been won").

Nor are there disputed facts that demonstrate a basis for plaintiffs to establish that they suffered an injury as a result of an interference with their right to access

courts. Because plaintiffs fail to respond to defendants' lack-of-injury argument in their response to defendant's motion for summary judgment, *see* Docket No. 54, the only pleading in which they allege injuries is their complaint. In their complaint, they state that defendants' conduct "interfered with the effective representation of Plaintiffs by their attorneys." Docket No. 6 at 4, ¶ 15. They further argue that "[a]s the result of the illegal opening and the delay [in receiving their legal mail], a risk was created that the confidential information contained in those communications could fall into the hands of persons who could use it to Plaintiffs' detriment." *Id.* at 4-5, ¶ 16. Finally, they argue that "[d]eprivation and delay of materials sent to Plaintiffs by their respective counsel denies Plaintiffs the opportunity to aid their counsel in their representation[.]" *Id.* at 5, ¶ 18.

However, plaintiffs cannot merely rely on the allegations in the complaint to preclude summary judgment. *See Celotex Corp.*, 477 U.S. at 324; *see also Arney*, 26 F. Supp. 2d at 1296 ("In order to allege an unconstitutional restriction on the *Bounds* right of access, an inmate must plead *and prove* he was actually impeded in his ability to conduct a particular case.") (emphasis added). Plaintiffs must designate "specific facts showing that there is a genuine issue for trial," *Celotex Corp.*, 477 U.S. at 324, which they have failed to do. Plaintiffs' allegations that defendants' conduct interfered with their attorneys' ability to provide effective representation, or that there was a risk that confidential information could have been inadvertently disclosed by the mishandling of legal mail, are either too conclusory or too speculative to establish a genuine issue of fact. *See Gee*, 627 F.3d at 1191 (finding that an allegation that

9

plaintiff was unable to do legal research and prepare his legal pleading was "too conclusory to present a plausible claim that [the plaintiff] was impeded in his effort to pursue a nonfrivolous legal claim."); *see also Vreeland,* 613 F. App'x at 683-84 (finding that an allegation that denial of access to certain recordings which plaintiff argued were necessary for him to pursue post-conviction relief was too speculative to constitute a concrete injury). *Cf. Simkins*, 406 F.3d at 1243-44 (finding that the plaintiff had demonstrated a sufficient injury to meet standing requirements because the fact that he did not receive defendants' summary judgment motion resulted in the admission of defendants' version of the facts, an inability to argue legal issues, and loss of an opportunity to appeal). In summary, the Court finds that plaintiffs have failed to meet their burden of establishing that a genuine issue of material fact exists as to whether they have been injured by defendants' conduct and have standing to bring their claim. As a result, the Court will grant defendants' motion for summary judgment.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 40] is **GRANTED**. It is further

**ORDERED** that plaintiffs' complaint is dismissed with prejudice. It is further

**ORDERED** that, within 14 days of the entry of this order, defendants may have their costs by filing a Bill of Costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED August 29, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge